IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GONZALO R. GONZALES, | ) | Case No. 2:07-cv-2355-MSB |
| Petitioner, | ) | **ORDER** |
| vs. | ) | |
| R.J. SUBIA, Warden, | ) | |
| Respondent. | ) | |

This case was reassigned to the undersigned judge. (Dkt. #21). Petitioner Gonzalo R. Gonzales, who is a state prisoner at California's Mule Creek State Prison, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. #1). Gonzales claims that the California Board of Parole Hearings (Board) violated his federal due process rights in denying him parole in 2006. The Court finds that the issues raised can be resolved by applying established legal standards to the evidentiary record in his case, without a need for additional briefing. Thus, Gonzales's request for appointment of counsel is **DENIED**. (*Id.* at 20). For the reasons stated below, his petition is **DENIED**.

**I.    Background**

On September 8, 1983, a jury found Gonzales guilty of second degree murder.[1] The murder occurred in San Jose, California on November 6, 1982. The victim was Gonzales's ex-girlfriend,

---

[1] In California: "Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder." *People v. Knoller*, 158 P.3d 731, 738 (Cal. 2007).

1   Sandra Stokes, whom he shot three times with a .25 caliber automatic pistol. (Dkt. #1, Exh. K). At
2   trial Gonzales claimed self defense, arguing that he shot Stokes accidentally when she stepped into
3   the line of fire between him and another man. He still maintains that the shooting was an accident.
4   (Dkt. #1 at 17). The trial court sentenced Gonzales to a term of fifteen years to life in prison. (*Id.*,
5   Exh. K).

6   On August 24, 2006 the Board held a parole hearing. The Board found Gonzales posed an
7   unreasonable risk to the community and denied him parole for another four years. (Dkt. #16, Exh.
8   5 at Exh. N, 45-48). The Board cited several factors for its decision to deny parole, including the
9   nature of his crime, his history of violence while in prison, an unfavorable psychiatric review, and
10  his failure to complete self-improvement programs or make acceptable employment plans should
11  he be released. (*Id.*).

12  Gonzales filed a petition for writ of habeas corpus in the Santa Clara County Superior Court
13  claiming that the Board had: (1) violated his state and federal due process rights in denying him
14  parole; (2) failed to follow its own regulations and California law; (3) refused to follow its own
15  matrix by not setting a release date; and (4) denied his due process rights by disregarding documents
16  he had presented regarding his commitment offense. (*Id.*, Exh. 1). The trial court denied the
17  petition because Gonzales failed to attach a record of the Board proceedings or any other
18  documentation "to prove that the Board lacked sufficient reasons for refusing to set a parole date."
19  (*Id.*, Exh. 2 at 1).

20  Gonzales filed a petition for review with the California Court of Appeal for the Sixth
21  District. (*Id.*, Exh. 4). On appeal, Gonzales attached a copy of the 2006 hearing transcript. (*Id.,*
22  Exh. 3). The appellate court summarily denied the petition. (*Id.*, Exh. 4). Gonzales then filed a
23  petition for review with the California Supreme Court, which also summarily denied review. (*Id.*,
24  Exh. 5-6).

25  Gonzales filed a federal petition for writ of habeas corpus in the U.S. District Court for the
26  Northern District of California on October 19, 2007. (Dkt. #1). The petition was transferred to the
27  U.S. District Court for the Eastern District of California on October 31, 2007. (Dkt. #1). Magistrate
28  Judge Edmund F. Brennan ordered the respondent to file an answer to the petition, and the

respondent filed one on July 29, 2008. (Dkt. #16). Gonzales filed a traverse. (Dkt. #17). This case was then reassigned to the undersigned judge (Dkt. #21) and stayed pending the decision of the en banc panel of the U.S. Court of Appeals for the Ninth Circuit in *Hayward v. Marshall*, No. 06-55392. The en banc panel issued its decision on April 22, 2010. *See Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc). Gonzales has not been paroled, has not received a parole hearing since August 2006, and has voluntarily postponed his next parole hearing until no later than July 27, 2011. (Dkt. #33).

## II.     Standard of Review

Because Gonzales filed his habeas petition after April 24, 1996, it is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-1321110 Stat. 1214.

"[W]hen it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo." *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). Here, the state trial court did not reach the merits of Gonzales's petition. (Dkt. #16, Exh. 2). Under California law, failure to attach evidence, such as the transcript of a Board hearing, can constitute a procedural default. *See, e.g.*, *In re Martinez*, 209 P.3d 908, 915 (Cal. 2009); *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995). Because procedural bar is an affirmative defense to a federal habeas petition, however, failure to raise it as a defense to the federal petition constitutes waiver. *Chaker v. Crogan*, 428 F.3d 1215, 1220-21 (9th Cir. 2005) (citing *Franklin v. Johnson*, 290 F.3d 1223, 1229 (9th Cir. 2002)). Here, the State "admits that the Petition is not subject to any . . . procedural bar" (Dkt. #16 at 2), and thus waives any defense in this Court based on Gonzales' failure to attach a transcript to his state habeas petition.

Because Gonzales's habeas petition was not adjudicated on the merits in state court, this Court reviews his claim de novo. *Chaker*, 428 F.3d at 1221.

## III.     Claims

Gonzales presents four arguments in his habeas petition, which the State concedes are exhausted to the extent they are formulated here. (*See* Dkt #16 at 2). This explicit waiver means this Court need not consider any exhaustion issue. *See* 28 U.S.C. § 2254(b)(3). Gonzales's claims

are as follows: (1) the Board violated his due process rights by denying him a fair and impartial hearing; (2) the Board failed to follow its own regulations; (3) the Board defied its own matrix by failing to set a release date for him; and (4) the Board violated his federal due process rights by refusing to examine the documents he presented regarding his commitment offense. (Dkt. #1 at 17-18).

### A. Board Decision Based on "Some Evidence"

The State argues that Gonzales may not obtain federal habeas review for whether there was "some evidence" for the parole decision. (Dkt. #16 at 3). This argument is foreclosed by the Ninth Circuit's recent en banc decision in *Hayward v. Marshall*, which held that due process challenges to California courts' application of the "some evidence" requirement for parole denial are cognizable on federal habeas review under AEDPA. 603 F.3d at 561-64. Under *Hayward*, federal courts reviewing habeas petitions must determine "whether the California judicial [or parole board] decision rejecting parole was unreasonable application" of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Pearson v. Muntz*, 606 F.3d 606, 2010 U.S. App. LEXIS 10481, slip. op. at *4 (9th Cir. 2010) (quoting *Hayward*, 603 F.3d at 563). This Court is bound by the California courts' interpretation of the "some evidence" requirement to the extent that it is a question of state law. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (federal habeas courts may not reexamine state court's determinations on state-law questions).

Gonzales makes several claims that collectively raise the issue of whether there was "some evidence" to support the Board's denial of his parole, or whether the Board's decision was "'based on an unreasonable determination of the facts in light of the evidence.'" 28 U.S.C. § 2254(d)(2); *see also Cooke v. Solis*, No. 06-15444, slip. op. 8661, 8677-78. (9th Cir. June 4, 2010). Because there is no state court decision identifying which of the Board's findings supports the denial of parole, this Court must "examine each of the [Board's] stated reasons for denying parole" to determine whether the Board's decision was supported by "some evidence." *Cooke*, No. 06-15444, slip. op. at 8679.

In California, "the paramount consideration for . . . the Board . . . under the governing statutes is whether the inmate currently poses a threat to public safety and thus may not be released on parole." *In re Lawrence*, 190 P.3d 535, 552 (Cal. 2008). Thus "the facts relied upon by the Board [must] support the ultimate decision that the inmate remains a threat to public safety." *Id.* at 554. In assessing that "ultimate decision," the "relevant inquiry is whether some evidence supports the *decision* of the Board . . . that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." *Id.* at 553; *see Hayward*, 603 F.3d at 562 ("'[S]ome evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole.").

The "some evidence" requirement is qualitative, not just quantitative. A reviewing court must examine whether the Board's decision to deny parole is "supported by some *evidence*, not merely by a hunch or intuition." *Lawrence,* 190 P.3d at 554. Courts must therefore determine "whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record." *Id.* at 560 (emphasis in original).

Here, the first reason the Board cites in support of the denial of parole is Gonzales's commitment offense. The Board concludes that Gonzales's crime "was carried out in a dispassionate and calculating manner" and "demonstrat[ed] exceptionally callous disregard for human suffering." (Dkt. #16, Exh. 5 at Ex N, 45). The nature of the commitment offense, however, "does not in and of itself provide some evidence of *current* dangerousness to the public." *Lawrence*, 190 P.3d at 555. Even if it could, Gonzales was convicted of second degree murder, which is defined by the absence of premeditation or deliberation and therefore cannot be "calculating." *See, e.g., Knoller*, 158 P.3d at 738. Moreover, because "it can reasonably be said that all second degree murders by definition involve some callousness . . . a conviction for second degree murder does not automatically render one unsuitable [for parole]." *In re Smith*, 114 Cal.App.4th 343, 366 (Cal. Ct. App. 2003) (citing *In re Rosenkrantz*, 29 Cal. 4th 616, 683 (Cal. 2002)) . Thus, for second degree murder to be "exceptionally callous" the prisoner must do more than simply kill the victim. For example, the Board could find callousness where the prisoner "tormented, terrorized, or injured [the victim] before deciding to shoot her; or that he gratuitously increased or unnecessarily prolonged

her pain and suffering." *Id.* at 367. In this case, although Gonzales "left [his victim] on the public sidewalk" after the shooting, this fact alone is insufficient to support a conclusion of callousness. (Dkt. #16, Exh. 5 at Exh. N, 36-37, 47). As a result, the Board's use of the commitment offense itself as evidence for denying parole was based on an unreasonable determination of the facts in light of the evidence.

The Board's decision denying parole, however, also linked the commitment offense to a larger pattern of violent behavior both before and after Gonzales's conviction. The Board noted that Gonzales was arrested for brandishing a weapon during a dispute with a landlord before his conviction, used drugs while in prison, and was "arrested for stabbing an inmate while in prison." (*Id.* at 45-46). The Board's conclusion that Gonzales's commitment offense did not deter him from engaging in further violent behavior therefore is supported by "some evidence," and demonstrates that the commitment offense was not "an isolated incident, committed while [Gonzales] was subject to emotional stress that was unusual or unlikely to recur." *In re Shaputis*, 190 P.3d 573, 584 (Cal. 2008). These "identified facts" are "probative to the central issue of current dangerousness," *Lawrence*, 190 P.3d at 560 (emphasis removed), and therefore constitute "some evidence" to support the Board's decision.

Additionally, the Board based its decision to deny parole based on Gonzales's institutional behavior—specifically, his numerous disciplinary infractions and failure to complete educational or vocational programs. The Board found that Gonzales had numerous disciplinary infractions: "[thirteen] 128A's, two since the last hearing, [twenty three] 115s including attempted murder, attempted weapons violation, assault, stabbing, force and violence." (Dkt. #16, Exh. 5 at Ex N, 46).[2] The Board also found that Gonzales had not participated in or completed any official self-help programs, had not attained satisfactory certifications in official vocations, and continued to struggle with drug use. (*Id.* at 46). Even when considered apart from the commitment offense, these

---

[2] Gonzales disputes the relevance of these disciplinary infractions and alleges that he was "set-up" by a "'White Racist faction' of Guards" and had to defend his life. (Dkt. #17, Traverse at 21-22). But the Board credited the official reports of these events over Gonzales' version.

findings are "probative to the central issue of current dangerousness." *Lawrence*, 190 P.3d at 560 (emphasis removed).

Finally, the Board cited Gonzales's most recent psychiatric evaluation. That evaluation, which occurred in 2001, found that Gonzales "shows no remorse for the victim"; has "a personality disorder with narcissistic borderline" and "antisocial features"; that "it's not clear [he] would be able to avoid alcohol and drugs if released"; and that these factors "make it difficult for him to identify with other individual's feelings and make him more prone to acting out." (Dkt. #16, Exh. 5 at Ex N, 36-37, 46).[3] The Board also considered the general uncertainty of Gonzales's post-conviction prospects (due to his lack of a marketable skill), and concluded that Gonzales "continues to be unpredictable and a threat to others." (*Id.* at 47). The California Supreme Court has held that a psychiatric evaluation that does not directly label a prisoner as dangerous but finds that he has been "unable to gain insight into his antisocial behavior" is "some evidence" that he "remains dangerous and is unsuitable for parole." *Shaputis*, 190 P.3d at 585. Therefore, the 2001 psychiatric evaluation satisfies this standard.

In sum, the Board's ultimate finding that Gonzales is currently dangerous identifies "some evidence" for its conclusion and is supported by the record. Accordingly, his petition must be denied.

**B.   Board Adherence to Regulations and State Law**

Gonzales argues that the Board did not adhere to California law (Dkt. #1 at 5) and failed to follow its own matrix by not setting his parole release date (*id.* at 6). Neither of these claims is cognizable on federal habeas review, however, because Gonzales does not tie his claims regarding the Board's adherence to parole regulations or the Board's decision not to apply the matrix to any federally cognizable interest. *Estelle*, 502 U.S. at 68; *Rivera v. Illinois*, 129 S. Ct. 1446, 1454 (2009); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). *But cf., Bd. of Pardons v. Allen*, 482 U.S. 369, 377-78 (1987) (holding that

---

[3]Gonzales disputes the accuracy of the 2001 psychiatric evaluation by presenting his 1983 evaluation, which found that he was a "minimal" danger to the community. (Dkt. #17, Exh. E). But because the Board must assess his *current* dangerousness, its reliance on the more recent 2001 report was proper.

state statutes can create liberty interests in due process protected by the federal Constitution); *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, (9th Cir. 2006).

### C. Due Process and the Opportunity to be Heard

Gonzales claims that the Board wrongly disregarded the documents that he presented to them and thereby "denied [him] a fair and impartial hearing." (Dkt. #1 at 15, 17). In particular, Gonzales argues that the Board did not properly consider the documents he compiled regarding his commitment offense that allegedly corroborate his contention that he acted in self defense and was therefore wrongfully convicted. (*Id.* at 17-18). This argument implicates Gonzales' due process right to have "an opportunity to be heard" at his parole hearing. *Greenholtz v. Inmates of Nebraska Penal Complex*, 442 U.S. 1, 12–16 (1979). Here Gonzales was given the opportunity to state his account of the events, as well as to speak on a number of other subjects. (Dkt. #16, Exh. 5 at Exh. N, 7-32). He was also given the opportunity to submit the documents he chose and to elaborate on them. (*Id.* at 8, 10). Additionally, when the Board read Gonzales the facts of the crime it was using to make its assessment, he himself acknowledged that the basic facts were "what happened." (*Id.* at 9). More importantly, the federal Constitution does not provide Gonzales a right to have the Board give the documents he did present the weight and credibility he believes they deserved. *See Greenholtz*, 442 U.S. at 12–16. The opportunity to be heard and to submit documents are *procedural*; they are not substantive guarantees that the Board will give a prisoner's arguments or evidence a certain level of weight or credibility. *See, e.g., Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).

In this case, there is no indication in the record that Gonzales was denied any procedural guarantees. Gonzales had legal counsel at his parole hearing. (Dkt. #16, Exh. 5 at Exh. N, 1). The Board also gave him ample opportunity to be heard, although it admonished Gonzales that he could not retry his case, the Board gave Gonzales the opportunity to state his version of the encounter that led to his conviction (*id.* at 7-15); explain his other arrests (*id.* 16-18); describe his plans for post-conviction employment (*id.* at 18-20); identify family and friends who would help him transition should he be released (*id.* at 20-23); explain his failure to pursue vocational certifications through

prison programs (*id.* at 26-28); and account for his disciplinary infractions while in prison (*id.* at 28-32). Finally, when the Board reached its decision to deny Gonzales parole, it informed him of the reasons, which included the nature of the commitment offense, Gonzales's failure to "develop a marketable skill" for post-release employment, his unfavorable 2001 psychiatric evaluation, and the numerous and sometimes violent disciplinary infractions he received in prison. (*Id.* at 45-48). The record therefore indicates that Gonzales received the constitutionally required process.

**Accordingly,**

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus (Dkt. #1) is denied.

**IT IS FURTHER ORDERED** that Petitioner's request for appointment of counsel (Dkt. #1) is denied.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Release on Appeal (Dkt. #31) is denied.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

DATED this 7th day of July, 2010.

/s/ Marsha S. Berzon
MARSHA S. BERZON
United States Circuit Judge, sitting by designation